## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GARY McCOLLUM and RONNIE BAZE,** **Individually and on behalf** **of all others similarly situated,** §§§§§ | |
| *Plaintiffs,* § | **Civil Action No. CIV-18-80-HE** |
| § | |
| **v.** § | **JURY TRIAL DEMANDED** |
| § | |
| **XTO ENERGY, INC.** § | **COLLECTIVE ACTION** |
| § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| *Defendant.* §§ | |

### JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Gary McCollum and the Opt-in Plaintiffs/Known Claimants ("Opt-in Plaintiffs"), (collectively, Plaintiffs) and XTO Energy Inc. (XTO) (collectively, Parties) submit this joint motion for approval of the Parties' settlement of Plaintiffs' claims brought against XTO under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. The Parties' Confidential Compromise Settlement Agreement and Release (Settlement Agreement) (Ex. 1) represents a fair and reasonable resolution of a *bona fide* dispute over the FLSA claims, and meets the standards for judicial approval. The Court should approve the agreement in full.

The Parties' Settlement Agreement provides Plaintiffs with a reasonable recovery in light of the risks inherent in continued litigation and trial. XTO has defended the claims asserted in this lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of this settlement, the Parties' Settlement Agreement is in both parties' best interest.

Accordingly, the Parties respectfully request the Court approve the Settlement Agreement (Ex. 1) in full.

1.  **PROCEDURAL HISTORY**

McCollum filed this putative collective action on January 25, 2018, on behalf of himself and other similarly situated Drilling Consultants and Completions Consultants, alleging XTO misclassified these workers as independent contractors and paid them a day rate with no overtime pay in violation of the FLSA. ECF 1. XTO denied Plaintiffs' allegations and raised several affirmative defenses, including assertions that (1) Plaintiffs were not its employees, (2) Plaintiffs were exempt from the FLSA's overtime requirements, (3) Plaintiffs were paid lawfully under the applicable law, and (4) XTO acted in good faith. ECF 70.

In this case, McCollum served two sets of extensive discovery on XTO. Additionally, McCollum served more than thirty subpoenas and DWQs on the staffing companies that sourced Drilling Consultants and Completions Consultants to XTO (Staffing Companies or Staffing Company), seeking documents related to communications with XTO, consulting agreements, invoices, and workers' contact information, time records, and payroll records. XTO produced nearly two thousand pages of responsive documents and served substantial sets of discovery on Plaintiffs. The Parties also took depositions. Ultimately, the Parties (and the Staffing Companies) exchanged hundreds of relevant documents that made them intimately knowledgeable of the claims and defenses in this case.

In March 2018, XTO moved to dismiss Plaintiff's class definition and related class allegations. ECF 21. The following month, after Plaintiffs amended their complaint, XTO renewed their motion. ECF 27. In December 2018, McCollum moved for conditional certification of a class of Drilling Consultants and Completions Consultants who provided services to XTO and were paid a day rate with no overtime. ECF 53. This Court certified the class in April 2019 (ECF 61) and authorized notice to class members in December 2019 (ECF 72).

On September 28, 2021, after spending months gathering relevant data regarding Plaintiffs from Third Party Staffing Companies, the Parties attended a full-day mediation with experienced wage and hour mediator, Anne Estevez. The Parties reached a settlement at the mediation, and they informed the Court. ECF 124. On December 10, 2021, the Parties executed a formal Settlement Agreement (Ex. 1) that the Parties now request the Court approve. Specifically, the Parties reached the following settlement that resolved their *bona fide* dispute:

| | |
|---|---|
| Gross Settlement Amount: | ██████████ |
| Class Counsel's Attorneys' Fees: | ██████████ |
| Class Counsel's Costs: | ██████████ |
| McCollum's Service Award: | ██████████ |
| Net Settlement Amount: | ██████████ |

*See generally* Ex. 1.

## 2. SUMMARY OF THE SETTLEMENT AGREEMENT'S KEY TERMS.

### A. The Gross Settlement Fund.

The Parties agreed to settle Plaintiffs' FLSA claims for ██████████ (the "Gross Settlement Amount."). *Id.* at ¶ 1.3. The Gross Settlement Amount includes the settlement payments to McCollum and the Opt-in Plaintiffs, Class Counsel's attorneys' fees, Class Counsel's out-of-pocket litigation expenses, and a Service Award to McCollum. *Id.* at ¶¶ 1.3, 3.1, 3.2.

Under the Settlement Agreement, Class Counsel shall receive their attorneys' fees in the amount of ██████████, which is 40% of the Gross Settlement Amount. *Id.* at ¶ 3.2. Likewise, Class Counsel shall receive reimbursement for the reasonable costs expended during this litigation in an amount not to exceed ██████████. *Id.* The Settlement Agreement also provides McCollum with a ██████████ service award to compensate him for his service as class representative. *Id.* at ¶ 3.1.1. Thus, the Net Settlement Amount for the settlement payments to Plaintiffs is ██████████. *Id.* at ¶¶ 1.4, 3.2. All attorneys' fees and litigation expenses are included in the Gross Settlement Amount, and XTO shall not make any payment beyond the Gross Settlement Amount.

**B. Class Counsel's Negotiated Fee Award.**

The attorneys' fee award accounts for 40% of the Gross Settlement Amount. *Id.* at ¶ 3.2; *see also* Ex. 2, Dunlap Decl., at ¶ 37. Thus, the Parties agreed that Class Counsel shall receive ▉▉▉▉▉▉▉ in attorneys' fees to compensate them for their efforts bringing and prosecuting this FLSA collective action. Ex. 1 at ¶ 3.2.

**C. The Net Settlement Amount.**

As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by the Plaintiffs during the applicable Class Period. Ex. 1 at ¶ 3.1. To calculate the *pro rata* settlement allocations, Class Counsel calculated XTO's share of each Consultant's alleged back wages under the FLSA based on the number of workweeks they worked during the three-year statutory period, using pay data the Parties obtained from XTO and its Staffing Companies. *Id.* Using this damage model, Class Counsel applied McCollum's and each Opt-in Plaintiff's *pro rata* share to the Net Settlement Amount to determine the settlement payment for each. *Id.* Class Counsel calculated the alleged unpaid overtime by taking the workers' total weekly pay divided by their total hours worked for the corresponding week to produce an hourly rate. Class Counsel then took the hourly rate and divided it by two and multiplied it by the number of alleged overtime hours to calculate total overtime owed. This formula was applied on a weekly basis for each of the Plaintiffs. A percentage was then assigned to each Plaintiff by taking the total amount of alleged overtime owed for each Plaintiff and using that number as a numerator and the total amount of damages for all Plaintiffs as a denominator. The Net Settlement Amount was then multiplied by the percentage for each Plaintiff to determine each individual Plaintiff's Settlement Award.

Class Counsel's attorneys' fees and costs will each be distributed in a single check that will be reported on an IRS Form 1099. *Id.* at ¶¶ 3.1.2. Likewise, McCollum's Service Award will be distributed in a single check that will be reported on an IRS Form 1099. *Id.* at ¶ 3.1.1.

**D. Release of Claims Against XTO.**

Any Plaintiff or Opt-in Plaintiff who participate in the settlement by returning an executed Settlement Agreement will receive their settlement payment and will release XTO from their wage/hour claims related to the time each participating Plaintiff was sourced to, or performing work for or on behalf of XTO, while employed or otherwise engaged by any of the Third Party Staffing Companies. *Id.* at ¶¶ 1.10, 1.11. The Settlement Agreement is intended to constitute a complete discharge of any and all liability of XTO to Plaintiffs.

### 3. THE COURT SHOULD APPROVE THE PARTES' SETTLEMENT.

#### A. The Legal Standard for Approval of FLSA Settlements.

Under the FLSA, covered employers must pay non-exempt employees overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

Courts have held that FLSA claims asserted in a private action may be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at *2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's*

*Food Store* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases).

"Settlements may be permissible in the context of a suit brought by employees because initiation of the action … provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55.

**B.  The Court Should Approve the Parties' Settlement.**

**i.      The Settlement Resolves a *Bona Fide* Dispute.**

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

XTO is one of the nation's leading natural gas and oil producers, operating throughout five divisions in the United States, Western Canada, and South America. XTO's energy operations include over eleven million acres of natural gas resources in North America and over fifty thousand operating wells.[1] In its operations, XTO utilized Drilling Consultants and Completions Consultants

---

[1] https://www.xtoenergy.com/Operations/Operating-areas

across the United States. EFC 53-1 at 10; ECF 53-2 at 15-16, 19. McCollum and the Opt-in Plaintiffs performed services to XTO, including performing daily checklists, assisting with the preparation of equipment, and reporting their observations to XTO.

McCollum alleges XTO misclassified him and the Opt-in Plaintiffs as independent contractors and paid them a day rate with no overtime in violation of the FLSA. ECF 1. XTO denies that Plaintiffs are owed any overtime wages and contends that these Drilling Consultants and Completions Consultants were properly classified and paid under the FLSA. ECF 70. XTO further contends that, if McCollum and the Opt-in Plaintiffs were its employees, they were exempt from the FLSA's overtime requirements. *Id.* XTO also raises various other affirmative defenses to liability, including that Plaintiffs were paid lawfully under the applicable law and XTO acted in good faith. *Id.*

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

### ii.    The Terms of the Settlement are Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-CV-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). Courts assessing an FLSA settlement for fairness and reasonableness often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020)

(citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Delvin v. Scardelletti*, 536 U.S. 1 (2002)); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

### a.    The Agreement Was Fairly and Honestly Negotiated.

First, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. Prior to their good faith, arms-length settlement negotiations, the Parties exchanged substantial data showing the days worked and compensation received by McCollum and the Opt-in Plaintiffs, as well as other information and documents regarding XTO's practices, Plaintiffs' job duties, and XTO's efforts to comply with the FLSA and related state wage and hour laws. The Parties gathered substantial data from the Third Party Staffing Companies showing the days worked and compensation received by McCollum and the Opt-in Plaintiffs. Both Parties created damages calculations based on this data. The Parties went through numerous offer and demand cycles. Settlement negotiations were facilitated by an experienced FLSA mediator, Anne Estevez. And, to formalize the settlement, the Parties continued their arm's length negotiations over the months following the full-day mediation. The negotiations by experienced counsel and assistance of an experienced mediator demonstrate the Settlement Agreement was fairly and honestly negotiated.

### b.    The Ultimate Outcome of the Litigation Was Unknown.

Second, questions of law and fact exist as to whether XTO is liable to McCollum and the Opt-in Plaintiffs and, if so, in what amounts. The Parties dispute the number of hours Plaintiffs

worked, Plaintiffs' classification, whether Plaintiffs were properly paid under the FLSA, whether Plaintiffs were exempt, whether XTO acted in good faith and thus whether liquidated damages are appropriate, and whether XTO acted willfully (which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations). The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### c.    The Value of the Settlement to the Plaintiffs Is Significant.

Third, the immediate recovery offered by the proposed partial settlement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in lengthy and costly discovery, disputes and motion practice regarding decertification, which would likely be followed by cross-motions for summary judgment, and potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees McCollum and the Opt-in Plaintiffs will receive a substantial recovery.

Indeed, the degree of success here is high because XTO vigorously contested McCollum and the Opt-in Plaintiffs' claims, denied that these Consultants were improperly paid, improperly classified, underpaid, that any alleged damages are owed. XTO denied that the Consultants are entitled to liquidated damages or that it acted willfully. Finally, XTO denied that it was the employer of any Plaintiffs or that it had any obligations to them under the FLSA or any other law.

Even though this case was hotly contested, the gross settlement awards approximately 62% of the total alleged three-year back wage liability (based on assumption Plaintiff an Opt-in Plaintiffs worked 12-hour days), and 79% of the total alleged three-year back wage liability (based on assumption Plaintiff an Opt-in Plaintiffs worked 10-hour days). Ex. 2 at ¶ 26. The net settlement awards approximately 36% of the total alleged three-year back wage liability (based on assumption

Plaintiff an Opt-in Plaintiffs worked 12-hour days), and 45% of the total alleged three-year back wage liability (based on assumption Plaintiff an Opt-in Plaintiffs worked 10-hour days). *Id.* This settlement represents substantial recovery considering the ongoing risks of litigation, the defenses at issue, and the real possibility of a protracted fight for unpaid overtime. Further, because the scope of the settlement (and release) is limited to only XTO, the Plaintiffs have not given up an of their rights to recover additional unpaid overtime from the Staffing Companies should they elect to do so.

> d.     **The Parties Agree the Settlement Is Fair and Reasonable.**

Fourth, the Parties agree that the settlement is fair and reasonable. McCollum and XTO both signed the Settlement Agreement. Plaintiff's Counsel represents and warrants that they have the authority to settle the claims of the Opt-in Plaintiffs and have signed the Settlement Agreement. All Plaintiffs will receive a copy of the Settlement Agreement and may participate in the settlement should they choose. If they do not wish to participate in the settlement, they will not receive their allocated portion of the settlement payment, with such portion of the settlement money being reverted back to XTO, and such Plaintiff could attempt to bring a claim in a different proceeding. This supports that the Parties' settlement is fair and reasonable..

> e.     **The Attorneys' Fees Under the Agreement Are Reasonable.**

Fifth, as discussed in greater detail *infra*, Class Counsel's fee award is fair and reasonable. *See*, *e.g.*, *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). The FLSA provides that the Court "shall … allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D. Okla. Oct. 23, 2018). If the Court examines Class Counsel's attorneys' fees, the Court should find they are within the customary fee range approved by courts in this Circuit (including in this District),

and that the amount requested is fair and reasonable under the circumstances of this case. *See*, *e.g.*, *McKinley v. Mid-Continent Well Logging Serv., Inc.*, No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *see also McMillian v. BP Service, LLC,* 2020 WL 4015259, at *3 (D. Kan. 2020) ("a 40% fee is fair and reasonable")*; Ostrander v. Customer Eng'g Servs., LLC*, No. 15-CV-1476-PAB-MEH, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 per cent to 58 per cent" of settlement fund).

## 4. THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.

Class Counsel's attorneys' fees in the amount of ███████ is reasonable, fair and an important provision of the Parties' agreement. Ex. 1 at ¶ 3.2; Ex. 2 at ¶ 29. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308; *Tabb*, 2018 WL 5269828, at *1. As courts across the country have recently recognized, district courts need not examine a separately negotiate attorney's fee award under an FLSA settlement. *See*, *e.g.*, *Barbee*, 927 F.3d 1024, 1027.[2]

Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed.

---

[2] *See also Horton v. Right Turns Supply, LLC*, 455 F. Supp. 3d 202, 206 (W.D. Pa. 2020) (emphasizing the court "does not believe it has authority to review the attorneys' fees component" of an FLSA settlement); *Thompson v. Spa City Steaks, Inc.*, No. 6:17-CV-6055, 2019 WL 5653215, at *2 n.3 (W.D. Ark. Oct. 31, 2019) (refusing to review the attorney fee provision of the parties' FLSA settlement agreement because it lacked statutory authority to do so); *Donoho v. City of Pacific, Mo.*, No. 4:19-CV-186-NAB, 2019 WL 5213023, at *2 (E.D. Mo. Oct. 16, 2019) (refusing to review he attorney fee provision of the parties' FLSA settlement agreement because "the statute does not require approval of settled attorney's fees" and concluding that "[b]ecause the agreed fees are not so disproportionately exorbitant alone to indicate collusion when compared to the compensation paid to Plaintiffs, the settlement agreement – including attorney's fees – will be approved without inquiry or comment into the reasonableness of the attorneys' fees"); *cf. Fails v. Pathway Leasing LLC*, No. 18-CV-00308-CMA-NYW, 2018 WL 6046428, at *2 (D. Colo. Nov. 19, 2018) (FLSA settlements do not require court approval absent special circumstances).

Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 103 S.Ct. 1933, 1941, 461 U.S. 424, 437 (1983)

    "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

    In assessing the reasonableness of attorney fee awards in collective actions, some courts within the Tenth Circuit have considered twelve factors the Fifth Circuit outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by

client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.* Considering the circumstances presented herein, Class Counsel's requested attorneys' fees and litigation expenses are imminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

### A. FLSA Collective Actions are Inherently Complicated, and Class Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10).

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g., Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether the McCollum and the Opt-in Plaintiffs were improperly classified as independent contractors; (2) whether McCollum and the Opt-in Plaintiffs were exempt employees, and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, Josephson Dunlap, LLP and Brucker Burch, PLLC and Anderson Alexander have a national docket of FLSA cases, with litigation across the United States. Ex. 2 at ¶¶ 7-9. In recent years, Class Counsel's joint

docket has carried around or over 250 cases involving FLSA collective action claims for oilfield workers, such as this case. Further, Class Counsel have litigated thousands of similar cases over the years with tremendous success. *Id.*

Class Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this and maximizes the settlement value of the case. *Id.* at ¶¶ 3-10. As one court has expressly noted, "the firms involved in this case on the Plaintiffs' side are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (emphasis added); *see also Horton*, 455 F. Supp. 3d at 207 (finding Class Counsel "conduct[s] themselves professionally, demonstrate[s] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders.").

Especially considering the number of Plaintiffs, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6. As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Class Counsel.

**B. The Time and Labor Required Was Substantial and Class Counsel's Requested Costs Are Reasonable (Factors 1 and 7).**

Regarding the time and efforts required of Class Counsel (factors 1 and 7), this matter has

been pending for over a year. During this time, Class Counsel, with the assistance of 7 lawyers, four law firms, and multiple staff members performed extensive work. *See* Ex. 2 at ¶ 11 (describing Class Counsel's time and effort spent on this case). This represents a significant amount of time expended to reach resolution of this case.

In addition, to-date Class Counsel has incurred ███████████ in unreimbursed costs. *Id.* at ¶ 30. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Class Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage, and other delivery or service fees, Pacer charges, legal research, and mediation costs. *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and under the Agreement, XTO does not object to the same. *See* Ex. 1 at ¶ 3.2

## C. Class Counsel Represented McCollum on a Contingency Basis (Factors 5, 6, 10, 12).

Next, the negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the contract between McCollum and Class Counsel provides for a contingency fee of 40% of the gross settlement amount. Ex. 2 at ¶ 29. Class Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Class Counsel would have carried various advanced costs, as well as unrecoverable time spent. Ex. 2 at ¶¶ 22-23. Class Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See,*

*e.g.*, *Aragon*, 2018 WL 6620724, at *6; *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *4 (D. Colo. 2015). The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

**D.  Class Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).**

As discussed *supra* in Section 3(B)(ii)(e), Class Counsel's request for attorneys' fees in the amount of 40% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. *Cf.* Ex. 2 at ¶ 29.

**E.  Degree of Success Obtained is High (Factor 8).**

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed *supra* in Section 3(B)(ii)(c), the degree of success here is high and supports Class Counsel's attorneys' fees.

For these reasons, Class Counsel's negotiated fee of 40% and reimbursement of Class Counsel's advanced litigation expenses in an amount not to exceed ███████ are reasonable and necessary in this case.

**5.  THE COURT SHOULD APPROVE MCCOLLUM'S SERVICE AWARD.**

McCollum's requested service award is reasonable, and XTO does not object to the same. Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See, e.g.*, *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Okla. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards

of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement.

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016)

The proposed ███████ service award to McCollum is reasonable, and XTO does not oppose this amount. The service award represents mere 0.5263157% of the Gross Settlement Amount and is intended to recognize McCollum's initiative and efforts on behalf of the Plaintiffs and the time and effort he contributed to this lawsuit and the settlement over the last year. Indeed, McCollum took a substantial risk in bringing the claims relating to XTO's alleged FLSA violations. Ex. 2 at ¶ 31. In doing so, McCollum faced potential retaliation and blackballing from prospective employers in the oil industry who, by merely performing a quick Google search of his name, may quickly see he sued his alleged former employer for back wages. *Id.* Moreover, McCollum expended significant effort and time in educating Class Counsel regarding the Drilling Consultant's and Completions Consultant's job experiences, compensation, and hours worked, as well as XTO's policies and procedures. *Id.* Likewise, McCollum assisted throughout the litigation by providing documents and information related for the services he provided XTO, helping prepare the Motion for Conditional Certification (including providing a supporting declaration for the same) to help the Opt-in Plaintiffs receive notice of their opportunity to join this collective action, and participating in settlement discussions and the settlement approval process to help ensure the

Plaintiffs recover their alleged unpaid wages. *Id.* McCollum also participated in numerous telephone conferences with Class Counsel and their staff over the course of the litigation. *Id.*

Because McCollum took significant personal risks in representing the interests of the Opt-in Plaintiffs and worked diligently to ensure they could recover the wages they are allegedly due, the proposed ███████ service award agreed to by the Parties is reasonable to compensate him for these inherent risks and his substantial efforts on behalf of the Plaintiffs.

## 6. CONCLUSION.

For all the reasons set forth herein, McCollum respectfully requests the Court approve the Parties' Settlement Agreement (Ex. 1) in full.

**Dated: December 17, 2021.**

*/s/ Andrew W. Dunlap*
Michael A. Josephson
mjosephson@mybackwages.com
Andrew W. Dunlap
adunlap@mybackwages.com
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 252-3300

Clif Alexander (*Admitted pro hac vice*)
Texas State Bar No. 24064805
clif@a2xlaw.com
Lauren E. Braddy (*Admitted pro hac vice*)Texas
State Bar No. 24071993 lauren@a2xlaw.com

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**
819 N. Upper Broadway Corpus
Christi, Texas 78401Telephone:
(361) 452-1279
Telecopier: (361) 452-1284

Noble K. McIntyre Oklahoma Bar
No. 16359
noble@mcintyrelaw.com
**MCINTYRE LAW, P.C.**
9601 S. Western Avenue Oklahoma City,
Oklahoma 73139Telephone: (405) 917-5250
Telecopier: (405) 917-5405

**ATTORNEYS FOR PLAINTIFFS**

_/s/ Felicity A. Fowler_

Felicity A. Fowler (*Admitted pro hac vice*) Texas State Bar No. 00784076
ffowler@mcginnislaw.com

**MCGINNIS LOCHRIDGE**
500 N. Akard Street, Suite 2250
Dallas, Texas 75201
Telephone: (214) 307-6961
Telecopier: (214) 307-6990

Elaine R. Turner, OBA #13082
eturner@hallestill.com
Lindsay N. Kistler, OBA #32814lkistler@hallestill.com
**HALL, ESTILL, HARDWICK, GABLE,GOLDEN & NELSON, P.C.**
100 North Broadway Avenue, Suite 2900Oklahoma City, Oklahoma 73102-8865 Telephone: (405) 553-2828
Telecopier: (405) 553-2855

**ATTORNEYS FOR DEFENDANT XTOENERGY INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that, prior to filing the instant Motion, Counsel for Defendant conferred with Counsel for Plaintiffs.

*/s/ Felicity A. Fowler*
Felicity A. Fowler


## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Oklahoma, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Felicity A. Fowler*
Felicity A. Fowler